## ST. LOUIS SOUTHWESTERN RY. CO. OF TEXAS v. DAVY BURNT CLAY BALLAST CO. (No. 9344.)

(Court of Civil Appeals of Texas. Dallas. Nov. 6, 1926.)

**1. Contracts ⬅➡281—Contract for burning ballast, providing for final pit measurement, therein defined, held controlling, notwithstanding different measurements were used to determine monthly estimates.**

Contract for burning ballast, providing for final measurements as pit measurements, with definition thereof as "external measurements of the pit of ballast standing in ballast pit," final determination of amount of ballast burned was to be determined in accordance therewith, notwithstanding that preliminary measurements, for purpose of making monthly estimates for payments were differently made, only as means adopted for purpose of ascertaining amount of delivery for payments under contract.

**2. Contracts ⬅➡332(I), 335(2)—Plaintiff in suit on written contract need not itemize account, showing dates and quantities of deliveries and amounts of payments.**

In suit on written contract for burning ballast, plaintiff was not bound to itemize account, showing dates and quantities of deliveries and amounts of payments, since written contract was alleged to have been performed, making question of proof of manner of performance and amount of payments made thereon matter of defense.

**3. Contracts ⬅➡332(I)—Allegation of obligation of railroad to refund fares paid in performing contract with it must itemize dates, amounts, and stations (Rev. St. 1925, art. 5526, subd. 5).**

In suit on contract for burning ballast, obligation of railroad to pay certain fares and freight in nature of refund of payments made thereon by plaintiff must be itemized as to dates and amount, and between which stations transportation was paid, in view of Rev. St. 1925, art. 5526, subd. 5.

**4. Limitation of actions ⬅➡50(I)—Limitation held not to run against cause of action on continuing contract for burning ballast until final completion.**

Contract for burning ballast, with provision for payments on or before certain date in each month according to engineer's estimate, held to be continuing contract, and statute of limitations would not start running against cause of action thereon until completion of total contract.

---

⬅➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**5. Limitation of actions** ⟨⟩46(6)—Cause of action under contract providing for payment on return of final estimate did not accrue until return of such estimate.

Under contract for burning ballast, with provision for final payment after return of final instrument, cause of action did not accrue until filing of such estimate, as affects running of limitations.

**6. Judgment** ⟨⟩223—Judgment on directed verdict for principal sum properly included interest from date of maturity as established by contract in suit (Rev. St. 1925, art. 5070).

Under Rev. St. 1925, art. 5070, where directed verdict for principal sum was returned, judgment properly included interest at rate of 6 per cent. from date of maturity, as established by written contract sued on.

Appeal from District Court, Dallas County; Louis Wilson, Judge.

Action by the Davy Burnt Clay Ballast Company against the St. Louis Southwestern Railway Company of Texas and another. From a judgment against the named defendant, it appeals. Reversed and remanded, with directions.

W. B. Hamilton, J. E. Gilbert, and E. B. Perkins, all of Dallas, for appellant.

William C. Greatman, of Chicago, Ill., and J. S. Dickey, of Wichita Falls, for appellee.

VAUGHAN. J. At a former term of this court judgment was rendered, reversing the judgment of the lower court and dismissing the cause. 273 S. W. 630. Writ of error was obtained by appellee, and on an opinion by the Commission of Appeals the Supreme Court reversed the judgment of this court, in so far as the dismissal of the cause of action, and remanded the cause to this court, with instructions to pass upon the assignments of error not comprehended in its former opinion (285 S. W. 295), that "necessary directions may be given on those questions that may arise on another trial." For a statement of the case, we refer to original opinion of this court. 273 S. W. 630, supra.

The record disclosed that not only was the issue on which this court was reversed directly called to appellee's attention by general demurrer, duly presented in the court below, but that in this court, both by brief and oral argument (and we are justified in assuming the same position was taken in the trial court), appellee deliberately took the position that it was exempt from the provisions of title 25, c. 26, Vernon's Sayles' Texas Civil Statutes 1914, under article 1319 (now title 32, c. 19, and article 1538, R. C. S. 1925), by reason of the fact that it was a corporation created for the purpose of maintaining a railway within the meaning of said article 1538, supra.

In reaching the conclusion that the cause should be dismissed, and not remanded, because of the failure of appellee to allege and prove that it, as a foreign corporation, had obtained a permit to do business from the secretary of state, we but followed the rule announced by the Supreme Court in the following cases: Taber v. Interstate Bldg. & Loan Ass'n, 91 Tex. 92, 40 S. W. 954; S. R. Smythe Co. v. Fort Worth Glass & Sand Co. et al., 105 Tex. 8, 142 S. W. 1157—and the plain provisions of article 1536, Revised Civil Statutes of 1925.

In the opinion of the Commission of Appeals, no authority is cited holding contrary to the rule of law announced by the above-named cases, and, as same were not discussed, they cannot be held to have been in that respect modified or limited, certainly not incidentally overruled. Therefore the members of the legal profession, consulting the cases relied upon as authority by this court in deciding that question, will find themselves in a state of uncertainty as to the law on a kindred situation.

Yet the judgment of this court was reversed, with instructions to remand the case to the trial court, in order that appellee should have another opportunity, by amendment, to allege and prove that it had obtained a permit to do business in compliance with the provisions of said title 32, c. 19, supra. This holding undoubtedly announces a new and far-reaching rule of practice, viz. that, where a party to a suit has failed to select the safe mode of procedure, he is entitled to an opportunity to extricate himself from the embarrassing situation in which his first selection placed him. This now must be accepted as a rule of procedure applicable, upon the principles therein stated, to all causes where it may develop that a material omission vital to the right to maintain a suit has been deliberately made in a pleading. This has been declared by the decision of the Supreme Court, supra, to be the rule of procedure in such matters, and until set aside by that tribunal must remain the law of this state.

Two contracts for the burning of ballast were entered into by and between appellant and appellee. Contract No. 1, dated June 22, 1908, related to pit No. 1, and contract No. 2, of date July 22, 1914, related to pit No. 2. Contract No. 1 was supplemented by an extension agreement dated January 5, 1910. Contract No. 1 furnishes the real subject-matter for controversy in this suit. In order to determine the major controversy between the parties, it is only necessary to consider and to give proper legal effect to the following provisions of contract No. 1:

"That the ballast company, for and in consideration of the compensation to be paid to it by the railway company, as hereinafter provided, hereby agrees to burn two hundred thousand (200,000) cubic yards of burnt clay ballast between Clinton and Josephine on the line of

---

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

said railway company, said ballast to be thoroughly burned and first class in every respect and furnished on the following terms and conditions: * * * and to complete the burning of said two hundred thousand cubic yards of ballast not later than December 31, 1909.

"II. The ballast company shall furnish the necessary lands from which to procure the required material for such ballast, and the ballast company shall furnish all material, tools, labor, and appliances necessary to carry out the provisions of this contract except as hereinafter specifically provided.

"III. The railway company shall furnish free of charge to the ballast company, on cars in the ballast pit, sufficient wood for starting and relighting of fires, and the necessary nut, pea, and slack coal for the burning of said ballast as desired by said ballast company. * * *

"VII. In consideration of the foregoing, the railway company agrees to receive two hundred thousand cubic yards of ballast at such location during the life of this contract, and to pay for the same at the rate of eighteen cents per cubic yard in pit, * * * on the first day of each month or as soon thereafter as is practicable. The railway company shall have the measurements taken of the ballast in the pit as shown by the external dimensions of the pile of ballast; * * * after each monthly measurement is taken the railway company shall have the right to load ballast as fast as it becomes accessible, except such as is necessary for the process of further burning.

"VIII. The railway company agrees, upon the completion of this contract and of the delivery of the full amount of two hundred thousand cubic yards of burnt clay ballast at said location, at the time and of the quality above specified, to pay for the same at the above-mentioned rate, payments to be made on or before the 25th day of each month and each and every cubic yard of burnt clay ballast as shown by engineer's estimate taken on or about the 1st day of same month, less 10 per cent., which is retained by the railway company to liquidate damages in case the ballast company fails to complete this contract as specified, but upon the completion of the burning of the full amount of two hundred thousand cubic yards of burnt clay ballast at said location, as above mentioned, the railway company agrees to pay the full amount due by the ballast company under this contract.

"IX. The final measurements shall be pit measurements, and shall be made by the engineer of the railway company and the engineer of the ballast company, as soon as all the ballast has been moved from the pit, and in case they cannot agree then same shall be submitted to arbitration as hereinafter provided, and final settlement shall be made as soon as possible thereafter. In case all the ballast shall not have been removed from the pit, then the engineer shall assume that the bottom of the pit shall run as shown by bottom of pit where all ballast has been removed and such bottom exposed and final measurement shall be made accordingly.

"X. 'Pit measurements,' means external measurements of the pit of ballast standing in ballast pit."

[1] It is clear from the terms of the contract that the ballast was to be produced by the burning of three ingredients: Wood; coal; and a form of earth called gumbo. The trial court properly held that the contract was free from ambiguity, but erred in reference to the meaning of the provisions relating to measurement for the purpose of ascertaining the amount of ballast burned by appellee under the provisions of said contract for and to be received and paid for by appellant. By the terms of the contract, appellee bound itself to burn from the materials (earth, coal, and wood) 200,000 cubic yards of ballast in consideration of 18 cents per cubic yard, to be paid by appellant for the ballast so burned and delivered to it. The parties were contracting with reference to the finished product, both as to the quantity to be delivered by appellee and to be received and paid for by appellant, at the rate of 18 cents per cubic yard. It was ballast that appellant had contracted to pay for, and not the material out of which said ballast was to be created. To secure appellant against failure on the part of appellee to perform every term of the contract to be kept by it, appellant was authorized to retain 10 per cent. of the amount of burnt clay ballast shown by engineer's estimate to have been taken out of the pit and received by appellant monthly. It was upon the completion of said contract by appellee, "and the delivery of the full amount of 200,000 cubic yards of burnt clay ballast," that appellant obligated itself to pay for the amount so contracted for at the rate specified, to wit, 18 cents per cubic yard for each and every cubic yard of burnt clay ballast so received by appellant.

Certainly this excludes the possibility of any uncertainty as to what was contracted for, in fact represents what was in the minds of the contracting parties when the contract was entered into, viz, the production of 200,000 cubic yards of burnt clay ballast by appellee to be delivered to and received by appellant, in consideration of the payment of 18 cents per cubic yard for each and every cubic yard of burnt clay ballast so delivered to and received by appellant. By the plain terms of the contract, appellant agreed upon the completion of the contract and the delivery by appellee to appellant of the full amount of 200,000 cubic yards of burnt clay ballast, at the time and of the quality specified, to pay for the ballast so received, not for the materials assembled for the purpose of producing the burnt clay ballast, for this would be but requiring appellant to pay for the raw materials necessary to be used in order to produce the burnt clay ballast contracted for, which would be the result of giving that effect to the terms of the contract providing for measurements and the making of monthly payments as contended for by appellee. Appellee contends that the monthly payments made by appellant under the preliminary measurements made for the pur-

pose of enabling appellant's engineer to furnish estimates upon which monthly payments should be made to appellee was an interpretation of the terms of the contract supporting appellee's counterproposition, viz.:

"Where parties to a contract, which is not ambiguous, or uncertain, act thereunder for a period of 39 months, in the absence of any allegation or proof of fraud or gross mistake, the party attempting to vary the terms thereof is estopped to repudiate his acts."

This proposition is based upon the following facts, which we find to have been established, viz.: That appellant's engineer made 39 monthly measurements of the ballast in pit No. 1, and furnished to appellant as many monthly estimates of the amount of burnt clay ballast removed from pit No. 1 by appellant as shown by such monthly measurements, and on such estimates appellant made monthly payments to appellee in different sums of money, aggregating $96,-883.06, retaining 10 per cent. of the amount of each estimate.

The preliminary measurements so taken and the monthly payments so made were but in compliance with the plain provisions of the contract, said provisions being undoubtedly for the purpose of furnishing some basis for the making of payments as the work should progress, in order to enable appellee to perform its contract. To secure appellant against failure to perform on the part of appellee, the contract provided for the retention of 10 per cent. of each monthly estimate based upon monthly preliminary measurements. This is borne out by the following provisions of the contract:

" * * * To pay for the same at the above-mentioned rate, payments to be made on or before the 25th day of each month for each and every cubic yard of burnt clay ballast as shown by engineer's estimate taken on or about the 1st day of same month, less 10 per cent., which is retained by the railway company to liquidate damages in case the ballast company fails to keep this contract as specified."

These payments were not a final settlement, it being clear from the following provision that full payment under the provisions of the contract would not be made until the full amount of 200,000 cubic yards of burnt clay ballast had been delivered to and received by appellant according to the provisions of said contract, viz.:

"But on the completion of the burning of the full amount of 200,000 cubic yards of burnt clay ballast at said location, as above mentioned, the railway company agrees to pay the full amount under this contract, less any amounts due by the ballast company under this contract."

That the monthly measurements provided for in the contract were not to be regarded as a final means of ascertaining the amount of ballast produced by appellee under the contract and received by appellant under its terms is made clear by the provision of the contract that declares that final measurements shall be pit measurements, which measurements shall be taken as soon as all the ballast has been removed from the pit, and further that the term "pit measurements" means external measurements of the ballast standing in ballast pit.

This language is not susceptible of any other meaning than that the object to be measured was not the material to be burned for the purpose of making burnt clay ballast, but could only have reference to and mean the finished product, to wit, the burnt clay ballast standing in the pit. No other contractual relation can be gathered from the terms of the contract, other than that appellant was contracting with appellee to burn, out of certain material, for appellant, 200,-000 cubic yards of burnt clay ballast, and that appellant obligated itself to pay to appellee the sum of 18 cents per cubic yard for the finished product, to wit, burnt clay ballast, and not to pay 18 cents per cubic yard for the material as and when same should be assembled for the purpose of burning ballast. The method of measurement was only a means adopted for the purpose of ascertaining, for the protection of both parties, the amount of ballast delivered by appellee to appellant within the terms of the contract, to the end that appellee would not be required to deliver more than its contract provided for, and, on the other hand, that appellant would not be required to pay for more than it had received under the terms of the contract. Therefore, if the means of measurement adopted by the parties for the purpose of determining the amount of ballast received by appellant from appellee under the terms of the contract should, if strictly complied with (and that the court does not concede to be the case), fall short of ascertaining the correct amount of ballast, the absolute contract on the part of appellee to furnish the 200,000 cubic yards of ballast and the corresponding obligation on the part of appellant to pay at the rate of 18 cents per cubic yard for the 200,000 cubic yards of ballast received by it should not be disturbed or made to give way, in order that the mode of measuring as thus provided in the contract should prevail.

This would be but making the substance of the contract subservient to that which represents the shadow thereof, the means of ascertaining the amount of material furnished by appellee to appellant, and to be paid for in accordance with the terms and provisions of the contract, fixing the amount of material to be received, the character of material, and the price to be paid therefor. The method adopted for ascertaining the amount of ballast furnished under the contract is by no means to be followed when, by doing so, the material substance of the contract, yea, that which represents the purpose

and object of making the contract, would be seriously impaired, or the performance in part by its own terms prevented. However, we are of the opinion that the method adopted by the parties for the purpose of ascertaining the amount of burnt clay ballast can and should be pursued, so as to ascertain the amount of burnt clay ballast left in pit after the burning had been completed. This necessarily includes top measurements of the ballast; this perforce of the following provision of the 1908 contract, viz. paragraph IX, "the final measurements shall be pit measurements," and of paragraph X, that "the term 'pit measurements' means external measurements of the pit of ballast standing in ballast pit."

[2] Appellant's second proposition, "The petition must contain allegations of the cause of action, notwithstanding and independent of exhibits attached thereto," is based upon the trial court overruling three special exceptions addressed by appellant to appellee's petition. The first two called in question appellee's failure to itemize the account, showing the dates, quantities of deliveries, and amounts of payments made by defendant, and ballast alleged to have been delivered under said contracts.

Appellee's suit is based upon two contracts, each providing for the burning of ballast by appellee, for the use and benefit of appellant, at a consideration therein named, to be paid for the ballast. The place of delivery is fixed at the place where the ballast was to be burned, same to be delivered in pits. Appellee alleged the performance of the terms and provisions of each one of said contracts to be performed and kept by it, viz. the delivery, at the time and place contracted for, of the ballast as contracted for, and in certain quantities; but the allegation did not contain the itemization on account of which said special exceptions were addressed to the petition. We think the allegations sufficient, in view of the fact that the suit is upon a written contract, the terms of which were alleged to have been performed and the manner in which same was performed was a question of proof, which appellee was not called upon to plead. As to the amounts of payments made by appellant, that was a matter of defense, to be presented in the form of a plea of payment. We think the ruling of the court on said exception is correct.

[3] The third special exception presents entirely a different phase of the case. Appellee alleged an obligation on the part of appellant to refund certain fares and freight which appellant had contracted to pay upon the happening of a certain contingency, in the nature of a refund to appellee of whatever sum or sums appellee should be called upon to pay, in the event it should be found that the contract on the part of appellant to transport laborers, material, and camp equipment, to be used in the performance of the contract to burn the ballast, could not be performed on account of being in violation of any state or federal statute; the allegation being:

"That there is due, to wit, the sum of $2,549.12, covering refunds of fares and freight as provided in the various contracts, and which amount is uncontradicted and admitted by the defendant herein."

The ground of appellant's exception thereto was because the claim was not itemized, and does not furnish the dates when any item of fare or freight was paid, nor amount, nor to whom, nor to what station, nor between what stations, transportation was had or paid for, nor the purpose for which it is claimed such payments were made, nor any facts showing that such payments were made for employés exclusively engaged in the performance of their contracts, or even in connection with the contracts sued upon, nor any other facts advising defendant of what it is called upon to answer. We think the exception should have been sustained. Article 5526, subdivision 5, Revised Civil Statutes 1925; Neyland v. Neyland, 19 Tex. 423; Bartholomew v. Shepperd, 41 Tex. Civ. App. 579, 93 S. W. 218; R. E. & W. T. Ry. v. Adams (Tex. Civ. App.) 98 S. W. 222–225; Ralston v. Altman Miller Co. (Tex. Civ. App.) 26 S. W. 746; Steger v. Greer (Tex. Civ. App.) 228 S. W. 304, 306 (2, 3); Macdonell v. International & Great Northern Ry. Co., 60 Tex. 590; Thompson v. Eanes, 32 Tex. 191; Wade v. Sheehan (Tex. Civ. App.) 226 S. W. 444.

Appellant's propositions 11 and 12 present the statute of four years' limitation, appellant contending that appellee's cause of action accrued under the terms of the contract whenever it was authorized to institute suit thereon, and that, four years having intervened between the accrual of plaintiff's cause of action and the filing of same, its right to recover was thereby precluded. The following provisions of the contract resolve this contention against appellant:

"VIII. The railway company, agrees, upon the completion of this contract and the delivery of the full amount of 200,000 cubic yards of burnt clay ballast, at said location, at the time and of the quality specified above, to pay for the same at the above-mentioned rate, payments to be made on or before the 25th day of each month for each and every cubic yard of burnt clay ballast as shown by engineer's estimate, taken on or about the 1st day of same month."

Section IX provides:

"The final measurements shall be pit measurements, and shall be made by the engineer of the railway company and the engineer of the ballast company as soon as all the ballast has been removed from the pit."

Section VII contains the following provision:

"On the 1st day of each month, or as soon thereafter as is practicable, the railway company shall have the measurements taken of ballast in the pit as shown by the external dimensions of the pile of ballast."

[4] By agreement of date January 5, 1910, appellant and appellee extended the contract of date June 22, 1908, so that same would expire on the 1st day of December, 1912, the amount of ballast to be burned being increased to 500,000 cubic yards. Appellee's cause of action did not accrue under the contract until the full amount of 500,000 cubic yards of burnt clay ballast (the amount of the original contract to furnish 200,000 having been increased by an extension agreement to 500,000) had upon the completion of the contract been delivered to appellant. The contract provided for:

"Payments to be made on or before the 25th day of each month for each and every cubic yard of burnt clay ballast as shown by engineer's estimate, taken on or about the 1st day of the same month."

This language clearly shows that the contract was a continuing one, from the date of its execution to the time the ballast should be removed from the pit. The right to demand full payment under the contract could not accrue until final measurement had been taken. The contract provides for monthly measurements, and for the measurement of the bottom of the pit after the ballast had been removed. Therefore it is apparent that limitation would commence to run from that time. Mr. Foscue testified that ballast was not removed from the pit covered by the first contract until the year 1917, at which time the final measurement and computation were made, so that the sum due could be determined. On this final measurement having been made, a cause of action then accrued by the terms of the contract. The suit was commenced November 19, 1919, and therefore was commenced within the four-year limitation period provided by statute.

As to the cause of action based on the contract of 1914, paragraph IV thereof provides:

"Whenever this contract and all things herein agreed to be done by the ballast company shall have been completed, performed, and finished according to the provisions hereof, and after the ballast has been finally measured, the railway company shall make and return a final estimate under this agreement, together with a statement of the amount due the ballast company and remaining unpaid. The railway company shall pay to the ballast company the full amount so found to be due said ballast company within thirty days after the return of said final estimate."

[5] The cause of action on this contract could not accrue until after the final estimate above provided for by the terms of said contract had been made. The record shows that such estimate, as contemplated by the above section of the contract, was made on April 23, 1917. Therefore the cause of action under the contract of 1914 accrued 30 days after April 23, 1917, and the suit thereon was begun within the period of limitation. As to that part of appellee's cause of action based upon the right to have refunded certain sums of money paid out by it on account of fares and freight, the statute of limitation was not available to appellant as to either one of the contracts sued upon on account of said items.

Paragraphs IV, VII, and XII of the 1908 contract contain the following provisions:

"IV. The railway company will, as part payment for said ballast and as a further consideration for the faithful performance of this contract, upon the written request of the ballast company, during the time of the performance of this contract and during the time of the performance of the option contained therein, should said option be exercised by the railway company, furnish free transportation over its lines of railway to such agents, officers, and employés of the ballast company as may be actually necessary for the performance of the work hereunder and for their return over said lines to any destination on the line of the railway company which may be designated after the termination of said work. * * *"

"VII. It is hereby further mutually agreed that in the event the said ballast company is required to pay to the railway company for the transportation of its agents, etc., * * * as provided in paragraphs IV and XII of this contract, the said railway company will pay to the said ballast company, in addition to eighteen cents per cubic yard for said ballast as aforesaid, an additional sum of money as compensation equal to the amount which the said ballast company is required to pay to the said railway company for the transportation charges aforesaid."

"XII. When the work required to be performed under this contract is completed, or if contract should become void by the failure of the railway company to comply with the provisions thereof, free transportation of men, laborers, tools, and supplies will be furnished by the railway company over its lines to the ballast company from the ballast pit aforesaid to any point upon the lines of the railway company which may be designated by the ballast company, as provided in paragraph IV of this contract."

As heretofore stated, said contract was completed during the year 1917, as shown by the testimony of appellant's witness Foscue. Therefore the action for such amounts due under said contract accrued at that time, and plaintiff's cause of action based thereon was not barred by the statute of four years' limitation.

Paragraphs IV and XIV of the 1914 contract contain the following provisions:

"IV. The railway company will, as part payment to the said ballast company, transport on its freight train all necessary machinery (which shall include tools, camp outfit, supplies and material, including water), to be used by the ballast company in the making of said

ballast, and will also transport in its regular passenger trains such officers, agents, and employés of the ballast company as may be actually necessary for doing the work of the ballast company under this contract, including transportation of both said machinery and said officers, agents, and employés from the said place of work, as well as to the same, and the railway company will also reimburse the ballast company for all amounts which the ballast company pays out to the St. Louis & Southwestern Railway Company, for transportation on its own rails of such machinery, tools, supplies, material, including camp outfit and supplies, officers, agents or employés of the ballast company, as may be actually necessary in the performance of the ballast company's obligation hereunder including return transportation from the place of work."

"XIV. Whenever this contract and all things herein agreed to be done by the ballast company shall have been completed, performed, and finished, according to the provisions hereof and after the ballast has been finally measured, the railway company shall make and return a final estimate under this agreement, together with a statement of the amount due the ballast company therefor and remaining unpaid. The railway company shall pay to the ballast company the full amount so found to be due to said ballast company within thirty days after the return of said final estimate."

Said contract does not contain any provision specially fixing the time for payment of any of the items mentioned in paragraph IV. Paragraph XIV is a general provision, which undoubtedly embraces within its terms the payment of all sums of money accruing under said contract to appellee. The letter signed by Eaton, addressed to Mr. W. T. Tyler, general manager, of date April 23, 1906, shows such a statement as contemplated by the above section of the contract. Therefore the cause of action under the contract of 1914 accrued as to any and all items of indebtedness accruing thereunder in favor of appellee against appellant 30 days after April 23, 1917, and was not within the bar of the statute of limitation of four years. We hold that the court did not err in refusing to submit appellant's pleas of limitation, as it was not the effect of either contract to provide for the maturity of any obligation, so as to give rise to a cause of action in favor of appellee on account of any demand arising thereunder before the performance of said contracts, respectively, by appellee.

[6] By its tenth proposition, appellant contends that the court erred in including as part of the judgment rendered against appellant interest for several years prior to the verdict on the principal, for which judgment was rendered. The court instructed the jury to return a verdict in favor of appellee in the sum of $10,590.44, as being the principal sum due appellee on account of having complied with its contracts with appellant. The jury returned a verdict as directed for said sum. The judgment based on the verdict awards appellee "the principal sum of $10,590.44." The paragraph containing this award is followed by the following:

"It is further ordered, adjudged, and decreed that said judgment shall bear interest at the rate of 6 per cent. per annum from and after the 1st day of January, 1918, until paid."

The judgment was rendered January 17, 1924. The written contract sued upon does not specify any rate of interest to be paid, but by its terms the principal sum payable and date of maturity is established. Therefore, under the law, on the sum found to be due as principal, appellee would be entitled to recover interest at the rate of 6 per cent. per annum from and after the time when such sum became due and payable, and, as it was only a matter of calculation, it was not incumbent on the trial court to submit that issue to the jury. We are therefore of the opinion that the trial court followed the proper rule of law in rendering judgment for interest. Article 5070, R. C. S. 1925; Fed. Life Ins. Co. of Chicago v. Kriton, 112 Tex. 532, 249 S. W. 193; American Woodmen v. Smith (Tex. Civ. App.) 251 S. W. 308; Atkinson v. Jackson Bros. (Tex. Civ. App.) 259 S. W. 280.

The judgment of the court below is reversed and remanded, with instructions to grant plaintiff (appellee) leave to amend, if requested, in order to allege the issuance to it of a permit by the secretary of state to transact business as a foreign corporation in Texas, and to further hear and determine any other issues before the court, or that may be presented to the court by additional pleadings not inconsistent with this opinion.

Reversed and remanded.