### WATSON CO. et al. v. SHAW et al.
### No. 10833.

Court of Civil Appeals of Texas. Dallas. Jan. 23, 1932.

Rehearing Denied March 5, 1932.

Lee, ·Lomax & Wren, of Fort Worth, and Coke & Coke, B. O. Baker, and Murphy W. Townsend, all of Dallas, for appellants.

W. H. Flippen, John T. Gano, and Frank A. Loftus, ·all of Dallas, for appellees.

LOONEY, J.

The Terminal Building Corporation of Dallas, as owner, contracted with Watson Company for the erection of certain office and warehouse structures in the city of Dallas. Watson Company sublet the brick, cement, stone, concrete, and masonry work to C. L. Shaw, the plastering to George W. Blue and H. G. Pittman (Blue & Pittman), and contracted with Lyle Clapper and Leland Clapper (Standard Concrete Tank Company) to provide and erect in place, ·and remove after being used, all necessary forms for the concrete work.

Alleging full performance of their respective subcontracts, Shaw, as plaintiff, and Blue & Pittman and Standard Concrete Tank Company, as interveners, sued Watson Company, general contractor, and its surety, the American Surety Company of New York, also the Terminal Building Corporation, owner, to recover interest that accrued on the principal sums due them, during the time payments were delayed.

Watson Company urged general denials and special pleas, setting up specific provisions of the subcontracts to the effect that, during the periods of delay, the architect, under whose supervision the buildings were erected, failed to accept the work of the subcontractors, and that the Terminal Building Corporation, owner, failed to indicate the amounts it was willing to pay for and on account of their work, wherefore said defendant was not liable. In a cross-bill, Watson Company alleged that, if the principal sums due subcontractors were not paid when and as they matured, such failure was due to the fault of the Terminal Building Corporation, and against the latter only should recovery, if any, be permitted; therefore Watson Company prayed for judgment over against the Terminal Building Corporation for the amount of the recovery, if any, against it. The American Surety Company adopted the pleadings of Watson Company.

The Terminal Building Corporation's answer to the subcontractors, consists of general demurrers, general and special pleas, to the effect that, while it contracted with Watson Company for the construction of said work, it entered into no contractual relations whatever with the subcontractors, and by general

demurrers and denials answered the pleas over against it by its codefendants.

The issues were submitted to a jury on plaintiff's and interveners' theory that their causes of action were based upon tort. The answers of the jury were favorable to plaintiff and interveners, and may be summarized as follows: They found that plaintiff and interveners were delayed in receiving payment of the principal sums due them under their respective subcontracts; that this delay was occasioned by the acts or omissions of Watson Company and the Terminal Building Corporation; that the default of Watson Company was caused by the acts or omissions of the Terminal Building Corporation; and that such delay resulted in the accrual of interest as damages to plaintiff and interveners at the rate of 6 per cent. on the principal sums from a period 60 days after date of their respective completions, to wit, February 12, 1926; and on special request a finding was made to the effect that the work of plaintiff Shaw was accepted in writing by the architect on December 14, 1925.

Upon these findings, judgments were rendered against all defendants, jointly and severally, in favor of plaintiff C. L. Shaw for $8,669.46, in favor of interveners Blue & Pittman for $3,185.98, in favor of intervener Standard Concrete Tank Company for $1,179.39, and in favor of Watson Company and American Surety Company of New York over against the Terminal Building Corporation for any part or parts of the judgments in favor of plaintiff or interveners that it might become necessary for either Watson Company or the surety company to pay.

The Terminal Building Corporation, Watson Company, and the surety company have appealed.

Plaintiff and interveners will be referred to as plaintiffs, Watson Company by its name, American Surety Company of New York as surety, and the Terminal Building Corporation as owner.

The record is voluminous, and the briefs lengthy, containing numerous propositions and counter propositions, a discussion of which would require an opinion of undue length; however, we will state our analysis of the case and rulings on all material issues, giving reasons for same, as tersely and briefly as practicable.

The pleadings alleged and the evidence disclosed all pertinent provisions of the written contracts between the parties; that is to say, the general contract between the owner and Watson Company, the subcontracts between Watson Company and plaintiffs, also the bond given by Watson Company and the surety to the owner for the faithful performance of the general contract. Excerpts from these will be quoted in the course of the discussion, as the occasion demands.

**The Owner's Appeal as against Plaintiffs.**

Plaintiffs make no contention that there exists privity of contract between them and the owner, but base their rights to recover against it on the tort theory. Their position in this respect is shown by the following excerpt from their brief; they say: "It should be borne in mind from the outset that plaintiff's cause of action was a damage suit wherein the measure of damage was interest. The allegations of plaintiff's petition were based upon tort and not upon contract." The question for decision is, Was the owner's liability either shown or the issue of liability raised by the evidence on the theory that an actionable tort was committed by the owner that delayed plaintiffs in collecting the amounts due them from Watson Company under their respective subcontracts?

The owner insists that the court erred in refusing, on request, to direct a verdict in its favor against plaintiffs, for that (a) the causes of action urged by plaintiffs are in essence ex contractu, in that they are based alone upon alleged breaches of contracts, which, as between the owner and plaintiffs, did not exist; (b) but, even if plaintiffs' allegations were sufficient to allege causes of action against the owner on the tort theory, the evidence failed to show that it owed any duty to either pay or to see that Watson Company paid plaintiffs the principal sum upon which they seek recovery of interest.

These contentions challenge the sufficiency of the evidence to show or even to raise an issue as to the owner's liability to plaintiffs. The concrete question presented is, Did the owner owe plaintiffs any duty to pay Watson Company, to enable the latter to pay them? If it is found that no such duty existed, it will not be necessary to inquire further as to whether or not the owner exercised reasonable diligence in the premises. We recognize the rule that the existence of privity of contract is not necessary to support an action of damages for negligent breach of duty, although such duty be connected with the subject-matter of a contract, but, if the owner in the instant case owed plaintiffs no duty, they must fail in the suit because its liability, if it exists at all under the facts and circumstances, must be based upon the negligent breach by it of a noncontractual duty owing plaintiffs. 1 Sherman and R. on Negligence, § 8; Texas C. Ry. Co. v. Harbison, 98 Tex. 490, 493, 85 S. W. 1138; National, etc., Co. v. Hunt, 312 Ill. 245, 143 N. E. 833, 34 A. L. R. 63; 45 C. J. 649, § 22.

If the owner owed plaintiffs such duty, it must have arisen from the intercontractual relations of the parties; therefore at this place we will notice pertinent provisions of the general contract, and other facts bearing upon or that illustrate the contractual obligations of the owner to Watson Com-

pany, for, if during the time of the alleged delay, for which the recovery of interest as damages is sought, the owner was under no contractual obligation to pay Watson Company to enable it to settle with plaintiffs, it must follow that no common-law duty was owing plaintiffs and the alleged conduct of the owner, in failing to pay Watson Company, would not constitute actionable negligence.

Article 5 of the general contract on acceptance and final payment reads:

"Final payment shall be due 60 days after the work is fully completed, and the contract fully performed, and the architect has so certified to the Owner; provided, however, that nothing in this Article of this contract shall be construed as limiting or interfering with the right of the Owner to withhold any amount that he would otherwise be entitled to withhold as liquidated damages, or to secure him as to any damages by him sustained, growing out of any breach of this contract by contractor. Upon receipt of written notice that the work is ready for final inspection and acceptance, the architect shall promptly make such inspection, and when he finds the work acceptable under the contract, and the contract fully performed, as by its terms provided, and the obligation of the Contractor thereunder fully discharged, and not otherwise, he shall promptly issue a final certificate, over his own signature, stating that the work provided for in the contract has been fully completed, and is, by him, accepted, under the terms and conditions thereof, and that the entire balance found to be due the Contractor, which is to be set forth in said certificate, is due and payable.

"Before he issues the final certificate, the Contractor shall furnish and submit evidence satisfactory to the architect that all pay rolls, material bills and all indebtedness connected with the work have been fully paid."

The final certificate of the architect was never secured or furnished by Watson Company to the owner, and this failure was urged by the owner as a ground of defense.

The owner also pleaded the following provisions of the contract: Article 16, "General Conditions," reading: "Neither the final payment nor any part of the retained percentage shall become due until the contractor, as required, shall deliver to the Owner a complete release of all liens arising out of this contract, or a receipt in full in lieu thereof, and, if required in either case, an affidavit that so far as he has knowledge or information the releases and receipts include all of the labor and material for which a lien could be filed. * * *" Article 43, "General Conditions," as follows: "The contractor agrees that he is as fully responsible to the Owner for the acts and omissions of his subcontractors and all persons directly or indirectly employed by him. Nothing contained in the contract documents shall create any contractual relations between any subcontractor and the Owner." Article 44, providing that: "* * * The Contractor and the subcontractor agree that: (n) * * * Nothing in this article shall create any obligation on the part of the Owner to pay to or to see to the payment of any sums to any subcontractor."

These provisions of the general contract were adopted and became parts of the subcontracts between Watson Company and plaintiffs, in that each agreed with Watson Company to do the work undertaken in accordance with the general contract, including "those things required by additional drawings which are consistent or true developments of the contract documents; it being the express intention of this agreement that both parties hereto are bound by all and singular the provisions of the contract documents referred to in Art. 22 of the General Conditions, in so far as any or all of said provisions may be applicable to the portion of the work that the subcontractor herein binds himself to do; that is, all and singular the contract documents, consisting of: (a) This agreement executed between the contractor and sub-contractor, (b) The said agreement executed by the Owner and the contractor, (c) The general conditions, (d) Drawings and specifications, general and special, including all modifications thereof incorporated in this contract documents before the execution of this agreement constituting the contract between the parties hereto, and all and singular the provisions thereof, are binding upon the parties hereto as far as applicable."

Article 4 of the subcontract reads: "The contractor (Watson Company) shall pay the subcontractor for the full performance of the subcontractor's obligations under this contract, subject to such additionals and deductions, if any, provided by the terms of the contract documents, the sum of $——," the amount agreed upon in the particular subcontract.

The record discloses that plaintiffs completed their contracts prior to January 1, 1926, that all progress payments had theretofore been made, and the controversies and conferences between the parties that supervened were with reference to final settlements. The claims urged by plaintiffs were for extra work ordered under the terms of the contracts, except an item of $8,377.88 in favor of Shaw that accrued under the general terms of his contract. Immediately after the completions, plaintiffs demanded of both Watson Company and the owner payment of the balance due upon their respective contracts; the amounts claimed, being in dispute, were later agreed upon as the result of protracted conferences, but at the thresh-

old of the conferences the owner, on April 19, 1926, addressed to Watson Company a communication, the terms of which being agreed to by it, as follows:

"In the matter of the conference about your bills and claims, on which we are about to enter, believing that a clear understanding of our purpose in suggesting the conference will make for frank and open discussion, we deem it proper to say:

"Your bills and claims have been gone into as much in detail as the data that we have been able to obtain from the architect and from you will permit, and there are many items that now appear to us as out of line, and we feel it is proper to give you full opportunity to explain your proposition and show us if we are wrong.

"It is not the intention or purpose, however, that the conference and discussion shall be in any way or sense taken as a substitute for the procedure and conduct in settlement of difference that is provided in and contemplated by the contract and neither party is to be taken as in any way prejudiced as to any rights it might otherwise exercise under the contract by going into the conference or in any way relieved of any of the obligations that it might otherwise be bound to under the contract."

At the time the conferences began and during their progress until agreements were reached, the owner urged objections to specific parts of the work of plaintiffs and other subcontractors; also claimed that Watson Company had failed to obtain the architect's final certificate showing completion of the work according to contract, had furnished no evidence showing that all pay rolls and indebtedness for materials, etc., incurred in connection with the work had been paid, and had failed to secure releases of liens theretofore fixed upon the owner's property. The owner also claimed of Watson Company large damages for its failure to complete the structures on schedule time.

The contractors and materialmen fixed liens on the buildings and property of the owner as follows: Three creditors furnishing material to Blue & Pittman, filed liens on the property prior to January 1, 1926, aggregating $4,960.75; the claim of Blue & Pittman proper for $42,640.41 was filed February 1, 1926; Campbell Paint & Varnish Company filed its claim for $4,184.17 on December 22, 1925; Pittsburg Plate Glass Company filed claim for $6,961.48 on June 2, 1926; McNeill Bros., subcontractors, filed for $27,467.96 on March 1, 1926; C. L. Shaw, plaintiff, filed for $77,-735.39 on March 13, 1926, and the Uvalde Rock Asphalt Company, subcontractor, filed for $44,684.27 on April 26, 1926. Thus it appears that, during the time it is alleged the owner delayed payments, there existed statutory liens upon its property, in favor of sub-

contractors and materialmen under Watson Company, aggregating the sum of $208,634.43.

These conferences were participated in by all the parties—that is, the owner and plaintiffs, and for a season by Watson Company—but it seems that the latter assumed the attitude that it could not agree with subcontractors on the amounts due them until they and the owner had first reached agreements; therefore in the early stages Watson Company ceased to participate in the conferences, committing to the owner the task of reaching agreements with plaintiffs. As the result of repeated hearings, the owner and plaintiffs reached agreements with Shaw on January 7, 1927, with Blue & Pittman on February 7, 1927, and with Standard Concrete Tank Company on February 19, 1927. The owner accepted the work of plaintiffs, waiving all objections theretofore urged, and plaintiffs in turn reduced their claims against Watson Company, agreeing to accept amounts materially less than at first demanded. Immediately after being reached, these agreements were reported by the owner to Watson Company. Under some arrangement between the parties, Shaw was paid $18,102.10 on August 2, 1927, and on the same date Blue & Pittman were paid $17,709.32, but final payments were not made until in April, 1928.

The facts recited in the agreements, that resulted in final payments being made on April 10, 1928, show that bona fide controversies had existed between the parties in regard to unreleased statutory liens, and other matters mentioned that grew out of the construction of the buildings; also that there was pending a lawsuit between the parties involving these matters. The agreement with plaintiff Shaw is typical of the others, and reads as follows:

"(1) Whereas, suit is pending in the 44th Judicial District Court of Dallas County, Texas, styled C. L. Shaw v. Watson Company et al., No. 70372–B, involving various claims and demands by various subcontractors and parties asserting liens against the Watson Company and the Terminal Building Corporation, growing out of the construction of what is known as the Santa Fé Building in the City of Dallas, and there is also involved claims and demands between the Watson Company and the said Terminal Building Corporation, one against the other.; and,

"(2) Whereas, the Terminal Building Corporation and Watson Company have entered into a contract of date April 10th, 1928, with reference to the controversies between them, growing out of the construction of said building; and,

"(3) Whereas, by said contract, provision is made for the payment and for advance of sums of money to pay various subcontractors the amounts owing to them, and among oth-

ers, to C. L. Shaw, the sum of Forty-Six Thousand One Hundred Seventy-One and ⁵⁷⁄₁₀₀ Dollars ($46,171.57), such payments conditioned, among other things:

" 'And it is understood and agreed as to the amount above specified to be paid to each subcontractor as above listed, that such payment shall be payable when and not until said Watson Company shall concurrently with such payment by the Terminal Corporation furnish to the Terminal Corporation the release of the Terminal Corporation and of its property from all liens, claims and demands of said subcontractor, and also like releases from all parties who have fixed or attempted to fix liens on the buildings or property of the Terminal Corporation or lodged by Court process or otherwise with the Terminal Corporation any claims or demands either under the Watson Company or under the particular sub-contractor on account of any labor done for or material furnished to the particular subcontractor of the Watson Company in connection with that part of the work the particular sub-contractor under the Watson Company has undertaken to do, or funds coming to such subcontractor account such work.' * * *"

In accordance with the agreements for settlement, plaintiffs released their liens, and on April 10, 1928, they received final payments; and plaintiffs and Watson Company each released the other from all claims and demands, including claims for delay growing out of the construction of said buildings, except plaintiffs reserved their claims for interest, involved in this suit.

We have stated the facts rather at unusual length, because the assignments under consideration call in question the sufficiency of the evidence to sustain the judgments against the owner, and again we believe that all appeals may be practically disposed of on the basis of fact here stated.

■ We now recur to the original question, Did the owner, under these facts, owe plaintiffs any duty to pay Watson Company sooner than payments were made, in order to enable the latter to discharge its contractual obligations to plaintiffs? We do not think so. Nothing is found in the general contract that obligated the owner to make final settlement by piecemeal to enable Watson Company to settle with a particular subcontractor; in fact, the express language of the contract forbids this idea. One of the provisions of the general contract, which by adoption became part of each subcontract, reads: "Nothing in this article shall create any obligation on the part of the Owner to pay or to see to the payment of any sums to any subcontractor."

As shown above, controversies had existed in regard to the amounts due plaintiffs by Watson Company, and that these were bona fide controversies is evidenced by the fact that each plaintiff agreed, on adjustment, to a material reduction; that is, Shaw agreed to a reduction of about $18,000, Standard Concrete Tank Company about $10,000, and Blue & Pittman about $20,000. There existed unreleased liens upon the property of the owner, and with reference to these the insistence of the owner is shown by its letter to Watson Company January 27, 1927, written soon after the agreements were reached. In this letter the owner called Watson Company's attention to the liens, describing each, and concluding the communication in the following language:

"While you would probably so understand any way, to prevent any misunderstanding, you are advised that under the provisions of Article XVI of the General Conditions of the contract this company required that there shall be delivered to it as owner a complete release of all of the above liens as well as all others that may have been or may be fixed arising out of the Watson Company contract with this Company and/or receipts in full for work done and materials furnished under your contract with this Company not covered by liens and full affidavit that releases and receipts include all labor done and material for which a lien could be filed under your contract, this latter to include an affidavit by the subcontractor in so far as the same may be necessary to complete the showing, before either the final payment or any part of the retained percentage shall become due to you under this Company's contract with you."

Thus it appears that, under the very terms of the contract, neither final payment nor any part of the retained percentage became due, nor was the owner obligated to pay Watson Company "until the contractor (Watson Company) shall deliver to the Owner a complete release of all liens arising out of this contract, or receipts in full in lieu thereof, and if required in either case, and an affidavit that so far as he has knowledge or information the releases and receipts include all the labor and material for which a lien could be filed," etc.

As Watson Company failed, until April 10, 1928, to comply with these contract provisions, the owner was under no contractual obligation to pay prior to that date; hence for this reason, as well as for others heretofore mentioned, the owner was under no duty to plaintiffs, and the charge of negligence urged against it cannot be maintained. In harmony with this view, we hold that, under the undisputed facts, the court below should have directed a verdict for the owner against plaintiffs.

### The Owner's Appeal as against Watson Company and the Surety Company.

■ As shown in the preliminary statement, the court rendered judgment in favor of plaintiffs against all defendants jointly and

severally, and gave judgment over against the owner in favor of Watson Company and the surety for any part or parts of the judgment in favor of plaintiffs, or either of them, Watson Company or the surety, should be compelled to pay off and discharge.

By appropriate assignments, the owner challenges the correctness of these judgments, on the ground of insufficient evidence, specifically that, before any such judgments could properly have been rendered, the evidence must have established the existence of a legal obligation on the part of the owner to Watson Company with respect to the payment of the amounts in controversy, and a breach of said obligation, and that no such proof was made.

In support of its judgment over, Watson Company contends that its liability to plaintiffs for accrued interest, if any exists, was occasioned by the wrongful conduct of the owner in delaying payments; therefore that the judgment over in its favor was correct. The surety adopted throughout the contentions of Watson Company.

For reasons already stated, we are of opinion that the owner was not contractually obligated to pay Watson Company until April 10, 1928, when settlements were reached; hence that the judgments in favor of Watson Company and the surety, over against the owner, were unauthorized, because to sustain the judgments would be in effect to compel the owner to make piecemeal payments to Watson Company in the face of positive provisions of the contract that forbid the existence of such an obligation.

As the record discloses that, at the time of trial, Watson Company was urging claims against the owner for extras and interest on delayed payments, and that a lawsuit was pending between them in regard to these matters, it is appropriate to say that our holdings herein are not intended as an adjudication of those unsettled matters.

#### Watson Company's Appeal as against Plaintiffs.

Watson Company, in a number of assignments, complains of the judgment in favor of plaintiffs against it, among others, that, it appearing from the pleadings that the causes of action sued upon are based on contracts, the court erred in submitting the case to the jury on the tort theory, and in refusing on request to instruct the jury that none of the indebtedness, on which plaintiffs sued for interest, became due and payable until the agreements were reached between plaintiffs and the owner—that is, on January 7, 1927 as to Shaw, on February 7, 1927, as to Blue & Pittman, and on February 9, 1927, as to the Standard Concrete Tank Company—in that, prior to the agreements the claims were unliquidated, the amounts due thereon being unknown.

In alleging their causes of action, plaintiffs set up the general contract between the owner and Watson Company and the respective subcontracts between Watson Company and themselves, alleging performances on their part and default on the part of Watson Company in not paying according to contract, and sought recovery of interest at the rate of 6 per cent. per annum on the amounts due for the time payments were delayed. Plaintiffs also alleged the execution of a bond by Watson Company, and its surety payable to the owner for the faithful performance of the general contract, by the terms of which plaintiffs alleged that the principal and surety promised and bound themselves to pay all persons furnishing labor and material to Watson Company in the prosecution of said work, that the bond inured to their benefit, hence they sought judgment against the surety company also, concluding with a prayer that they (each) have judgment against defendants jointly and severally for the amounts of interest, debt, and/or damage due and owing them, as alleged, with interest, etc.

It is obvious that plaintiffs declared upon contracts alleged to have been performed by themselves and breached by Watson Company; this constituted their causes of action. As the relations of the parties are purely contractual, necessarily their causes of action are ex contractu, arising from alleged breaches of contracts, and are not susceptible of being metamorphosed into actions ex delicto by simply assuming that they are such; so, as between plaintiffs, Watson Company, and the surety, the controversies will be determined on the basis of the existence of these contractual relations.

As before shown, Watson Company owed plaintiffs the amounts agreed upon between them and the owner, and this suit is to recover interest that accrued thereon from the dates the same became due until the date of payment. Article 5070, R. S. 1925, we think, controls this situation. The statute reads: "When no specified rate of interest is agreed upon by the parties, interest at the rate of six per cent per annum shall be allowed on all written contracts ascertaining the sum payable, from and after the time when the sum is due and payable; and on all open accounts, from the first day of January after the same are made."

In Federal, etc., Co. v. Kriton, 112 Tex. 532, 249 S. W. 193, the Supreme Court, approving answers to certified questions by section A of the Commission, held, in an action on a policy indemnifying assured against disability from sickness by the payment of fixed weekly sums while totally disabled, and a fixed amount for medical attention when a surgical operation became necessary, that the policy was a written contract stating the sum payable, on which interest at 6 per

cent., in case none is specified, is recoverable by article 4977 (now art. 5070) R. S. The court held that the fact that the contract provides the condition on which liability depended and fixed a measure by which the sum payable could be ascertained, was sufficient to render the contract one to which the statute applied, although it became necessary, as in the instant case, to go outside the contract to definitely ascertain the sum payable. Also see the following cases, more or less in point: American, etc., Co. v. North Texas National Bank (Tex.. Civ. App.) 14 S.W.(2d) 88, 92; Bunker, etc., Corp. v. McCall (Tex. Civ. App.) 8 S.W.(2d) 719; City of Ranger v. Hagaman (Tex. Civ. App.) 4 S.W.(2d) 597, 599; St. Louis, etc., Co. v. Davy, etc., Co. (Tex. Civ. App.) 288 S. W. 855, 861; Alliance Ins. Co. v. Continental Gin Co. (Tex. Civ. App.) 274 S. W. 299, 304; Western Union v. Eckhardt (Tex. Civ. App.) 2 S.W.(2d) 505, '509; Wichita, etc., Co. v. Winant (C. C. A.) 295 F. 67, 71.

■ But when did the principal sums become due and payable? For it is from this date that interest should be calculated. The record discloses that from January 1, 1926, plaintiffs having completed their work just prior to that time, to the time the owner and plaintiffs agreed upon the amounts of their respective claims, there existed controversies as to the amounts plaintiffs were entitled to be paid for extras. That these were bona fide controversies is evidenced· by the fact that plaintiffs materially reduced their claims and the owner in turn waived certain specific objections to their work. Prior to these agreements, Watson Company did not know what amounts to pay; hence was not in default until the amounts were agreed upon. On this particular point, Mr. Shaw testified that, prior to January 7, 1927, the date the agreement was reached between him and the owner as to the value of his extras, Watson Company did not know what the owner was willing to pay, nor what he (Shaw) was willing to accept; "therefore," Shaw said, "the Watson Company was not in position to know, during that time, how much they should or ought to pay for my extra work." Lyle Clapper, of Standard Concrete Tank Company, testified to the same effect. In view of this testimony and other pertinent facts, we hold that, prior to the consummation of these agreements, the amounts due and owing by Watson Company to plaintiffs were unknown, and that their claims were unliquidated.

■ In such a situation, the authorities seem to hold that interest will not be allowed on a demand until the amount is made certain, either by an accord or verdict. In Cox v. McLaughlin, 76 Cal. 60, 18 P. 100, 105, 9 Am. St. Rep. 164, involving a construction contract, the court used the following language in point: "But where * * * the

amount of the services, their character and value, can only be established by evidence in court, or by an accord between the parties, and are not susceptible of ascertainment either by computation or by reference to market rates, or other known standard, * * * plaintiff is not entitled to interest prior to verdict or judgment." To the same effect, see Lester v. Highland, etc., Co., 27 Utah, 470, 76 P. 341, 343, 101 Am. St. Rep. 988, 1 Ann. Cas. 761; Agency, etc., Co. v. American Can Co. (C. C. A.) 258 F. 363, 377, 6 A. L. R. 1182. We are of opinion, therefore, that plaintiffs are entitled to collect from Watson Company statutory interest on the agreed amounts of their claims from the dates of the accords; that is, from January 7, 1927, as to Shaw, from February 7, 1927, as to the Standard Concrete Tank Company, and from February 19, 1927, as to Blue & Pittman.

### The Surety's Appeal against Plaintiffs.

Having determined that the causes of action alleged and proven by plaintiffs against Watson Company are ex contractu, it will be necessary to notice but one ground urged by the surety for reversal; that is, that the bond upon which it became surety for Watson Company, was exclusively for the benefit of the owner, and cannot be construed as an affirmative promise to pay plaintiffs for the material and labor furnished by them to Watson Company under their respective subcontracts.

■ The language of the bond, after certain preliminary recitations, is: "Now, therefore, the condition of this obligation is such that if the Principal shall faithfully perform the contract on its part, and satisfy all claims and demands incurred for the same, and shall fully indemnify and save harmless the Owner from all cost and damage which he may suffer by reason of failure so to do, and shall fully reimburse and repay the Owner all outlay and expense which the Owner may incur in making good any such default, and shall pay all persons who have contracts directly with the Principal for labor or materials, then this obligation shall be null and void; otherwise it shall remain in full force and effect."

We think the bond, by its express terms, wherein the makers undertook, in addition to obligations assumed to the owner, "to pay all persons who have contracts directly with the principal for labor or material," was payable to and inured to the benefit of plaintiffs. The following cases are in point and support this construction of the bond: Koehler v. Standard, etc., Co. (Tex. Civ. App.) 230 S. W. 785, and authorities cited; Mosher Mfg. Co. v. Equitable Surety Co. (Tex. Com. App.) 229 S. W. 318; Republic, etc., Co. v. Cameron (Tex. Civ. App.) 143 S. W. 317; United States, etc., Co. v. Thomas (Tex. Civ.

App.) 156 S. W. 573; Nelson v. Stephenson (Tex. Civ. App.) 168 S. W. 61; Texas Glass & Paint Co. v. Crowdus, 108 Tex. 346, 193 S. W. 1072.

### Conclusion.

■ We think it is obvious that plaintiffs' cause of action against Watson Company and the surety, as exhibited both by pleadings and proof, are in essence and meaning ex contractu, and that they were entitled to recover alone upon that theory. Although they contend primarily that their causes of action are ex delicto, yet they insist in the alternative that, even if viewed as ex contractu, they are, under the pleadings and proof, entitled to recover on that theory.

Ordinarily, the case in its entirety would have to be remanded for further proceedings, but, as the pleadings are sufficient, the evidence fully developed, the facts on all material issues uncontradicted, and the matters to be decreed certain, it becomes our duty, under article 1856, R. S. 1925, to render such judgments as the court below should have rendered. Believing the court below should have instructed verdicts and rendered judgments in favor of the Terminal Building Corporation against plaintiffs, and Watson Company and the surety on their cross-bills, believing that the trial of the case on a wrong theory resulted in rendition of excessive judgments against Watson Company and the surety, and that the jury should have been instructed to find for plaintiffs against said defendants interest at the rate of 6 per cent. per annum on the amounts due each, respectively, only from the dates and as fixed by agreements reached in January and February, 1926, as hereinbefore stated, and on this basis that judgments should have been rendered; therefore it is ordered that the judgments below in favor of plaintiffs, and Watson Company and the surety against the Terminal Building Corporation, be reversed, and that judgment be here rendered in its favor, and that it go hence and recover its costs; that the judgments in favor of plaintiffs against Watson Company and the surety, being excessive, are reformed as follows: instead of amounts recovered below, that C. L. Shaw recover the sum of $4,575.03, that George W. Blue and H. G. Pittman, composing the firm of Blue & Pittman, recover $1,560.65, and that Lyle Clapper and Leland Clapper, conducting business under the name of Standard Concrete Tank Company, recover $697.90; and, as reformed, are affirmed, with interest on each amount at the rate of 6 per cent. per annum from March 8, 1930, the date adopted by the trial court from which to calculate interest on judgments. The costs of appeal are adjudged against the plaintiffs, jointly and severally.

Reversed and rendered in part; reformed and affirmed in part.

### On Rehearing.

Watson Company and the American Surety Company filed separate motions for rehearing; appellees (subcontractors) filed a joint motion for rehearing, also a motion to retax the costs.

■ As the Terminal Building Corporation, Watson Company, and the American Surety Company each prosecuted a successful appeal, costs incident thereto were, in our opinion, properly taxed against appellees; therefore the motion to retax is overruled. Articles 1857 and 1870, R. S. 1925.

The only question raised in the motion of appellees, not fully discussed in the original opinion, is the contention that, as the architect accepted Shaw's work and issued a certificate to that effect December 14, 1925, he was entitled to interest on the amount owing for the period beginning 60 days after December 14, 1925, to the date of payment, which he contends amounts to the sum of $6,595.86.

In the original opinion we stated that the jury found, in response to an issue, that the architect accepted Shaw's work on December 14, 1925, but omitted to say in that connection that Shaw failed to present the architect's certificate to Watson Company and asserted no rights thereunder until after receiving payment in full of the principal sum due him; in fact, the evidence is undisputed that Watson Company had no notice of the architect's acceptance until in the fall (October or November) of 1929, final payment to Shaw having previously been made on April 10, 1928. In this situation we do not think Watson Company was obligated in any way by the undisclosed acceptance or that Shaw could predicate thereon any claim until brought to the notice of Watson Company.

In its motion Watson Company insists that, the case having proceeded below on the theory that plaintiffs' causes of action were ex delicto in nature; therefore in view of the holding of this court to the effect that they were ex contractu, and upon that theory disposed of the appeal, that the case should be remanded as to all parties, in order to afford defendants an opportunity to urge defenses appropriate to actions based upon contracts.

We held, as disclosed in the original opinion, that the causes of action alleged and proven are essentially ex contractu; manifestly this was the theory upon which Watson Company proceeded in the lower court, tersely and concretely expressed in its twentieth assignment of error as follows:

"The court erred in overruling and in not sustaining the following objection urged by this defendant to Special Issues submitted to the jury as between the plaintiff and intervenors and this defendant, towit:

"Because under the pleadings in this cause

and the contracts sued on, the plaintiff and intervenors, respectively, were entitled to receive payment for their work when due under the respective contracts and the only issues that should be submitted to the jury under the pleadings and testimony are such issues as should elicit from the jury findings as to when the indebtedness to the plaintiff and intervenors, respectively, was due, and all questions as to whether acts or omissions of this defendant occasioned delay to the plaintiff and intervenors, respectively, in receiving payment, are immaterial."

Consistent with the dominant thought disclosed in this assignment, we reformed the judgments against Watson Company (and the surety) on the theory presented in its proposition No. 11 as follows:

"The court erred in refusing to instruct tne jury that as against Watson Company none of the indebtedness on which plaintiffs sue for interest was due until the respective dates of the settlement agreements between plaintiffs and the Building Corporation, and that as against Watson Company no interest should be considered prior to those dates, because the evidence shows that the claims of the respective plaintiffs for extra work were unliquidated, and the amount due the plaintiffs for such extra work was not known either to the plaintiffs or to Watson Company, and the amount was not definitely determined as to C. L. Shaw until January 7th, 1927, as to Standard Concrete Tank Co. until February 19th, 1927, and as to Blue & Pittman until February 7th, 1927."

Therefore we find no merit in the suggestion of Watson Company that the case ought to be remanded to afford an opportunity to urge defenses appropriate to an action ex contractu, because it is evident that was precisely the theory that shaped its defense in the court below as well as its insistence on appeal.

No complaint was made that the architect failed to issue proper estimates as the work progressed, nor that the prices fixed by him were not correct; the questions presented were as to the amounts due plaintiffs on final settlement and the dates when same became due. We held that these facts, that is, the amounts due plaintiffs by Watson Company on final settlement, having been ascertained by the parties in their own way, that is, by voluntary conferences, that all provisions of the contracts requiring architect's certificates as conditions precedent to payments were waived, and that neither party could base a valid contention on the nonaction, bias, or interest of the architect. Furthermore, Watson Company having failed to request an issue to determine whether it was excused from furnishing the owner an architect's certificate on account of the interest or bias of the architect cannot urge such matter for the first time in a motion for rehearing.

After due consideration, we overrule all motions for rehearing.